**SEND**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| SPALDING LABORATORIES, INC., a California Corporation,, <br><br>Plaintiff, <br><br>vs. <br><br>ARIZONA BIOLOGICAL CONTROL, INC., d/b/a ARBICO ORGANICS, an Arizona Corporation, and DOES 1 through 50, inclusive, <br><br>Defendants. | CV 06 - 1157 ODW (SHx) <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR ATTORNEY FEES |

In this action, Plaintiff Spalding Laboratories, Inc. ("Spalding") alleged that Defendant Arizona Biological Control, Inc.'s ("ARBICO") violated section 43(a) of the Lanham Act by, among other things, falsely advertising its fly control products. After Spalding rested its case on November 8, 2007, ARBICO moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) and 52(c). The Court denied ARBICO's motion without prejudice and permitted Spalding to re-open its case in an effort to address the evidentiary deficiencies delineated in the Court's Order. Upon resting its re-opened case, ARBICO renewed its Rule 50(a) and 52(c) motion whereupon the Court granted judgment as a matter of law in favor of ARBICO. The Court's Orders on November 16, 2007 and November 21, 2007 outline the facts of the case and the reasoning for the Court's decision. [Docket # 100, 103].

Now before the Court is ARBICO's Motion for Attorneys' Fees. According to its papers, ARBICO seeks an award of fees against Spalding in the amount of $818,994.50.[1] Having considered the arguments raised in support of and in opposition to the instant Motion[2], the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the following reasons, ARBICO is awarded fees in the amount of **$95,579.80**.

**I.    DISCUSSION**

    A.    <u>Entitlement</u>

The Lanham Act *permits*, but does not mandate, an award of attorneys' fees to a prevailing party in "exceptional circumstances." 15 U.S.C. § 1117(a). A prevailing defendant may be entitled to an award of fees under the Lanham Act "[w]hen a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith." *See Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir.1997). Here, ARBICO prevailed in its Rule 50(a) and 52(c) motion at the close of Spalding's case-in-chief and, therefore, seeks an award of attorneys' fees.

The Court finds that ARBICO is entitled to a reasonable fee award because of the "exceptional circumstances" created by Spalding's Lanham Act claim. To begin, the Court refrains from opining on the propriety of Spalding's false advertising allegations. Indeed, it certainly appears to be the case that Spalding had a good faith basis for making such allegations in the first instance. Where Spalding's case becomes "exceptional," however,

---

[1] Though ARBICO's Notice of Motion requests $819,004.50, that amount appears to be slightly miscalculated. Based upon ARBICO's Motion, the correct requested amount of $818,994.50 comprises $520,828.00 in pre-trial attorneys' fees, $288,416.50 for trial and post-trial defense, and $9,750.00 in fees related to the instant Motion.

[2] The Court strikes and does not consider Spalding's 14-page "sur-opposition" to ARBICO's reply brief. *See* Local Rule 7-10.

1  is when it insisted on pursuing a claim which was all but nullified by the Court's rulings
2  on several vehemently contested motions in limine, and further doomed upon conclusion
3  of the October 22, 2007 Daubert hearing. [Docket #79, 80, 89.]

4        Instead of acknowledging the flaws in its case, Spalding pressed forward and
5  required ARBICO to litigate for 10 days in front of a jury.  It did so knowing it no longer
6  had admissible evidence of literal falsity, and, alternatively, was fully aware of its lack of
7  survey evidence capable of proving that a "statistically significant" portion of the relevant
8  consuming public were misled by ARBICO's ads.  *See* Nov. 16, 2007 Order [Docket #100]
9  at 5-10; 11-14; *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th
10  Cir. 1997) ("Even if an advertisement is not literally false, relief is available . . . if it can
11  be shown that the advertisement has misled, confused, or deceived the consuming
12  public."); *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 244-45
13  (9th Cir. 1990) (noting that a substantial segment of the target audience must be deceived).
14  Essentially, Spalding turned a blind eye to the Court's warnings.  It made empty promises
15  to the Court that "survey" evidence existed and afforded no time to proving liability,
16  focusing instead on Tom Spalding's self-serving damages calculations.

17        Spalding had the responsibility to consider its case and determine whether it had
18  merit, not only upon filing suit, but throughout the entire litigation process, and especially
19  after the Court's November 16, 2007 order.  It did not do so.  Accordingly, this case, while
20  perhaps not initially "exceptional," became so when Spalding continued to pursue its false
21  advertising claim after knowing it no longer had sufficient evidence to prevail.  *See e.g.*
22  *Cairns v. Franklin Minto Co.*, 115 F.Supp.2d 1185, 1189 (C.D. Cal. 2000) (awarding
23  attorneys' fees to prevailing Lanham Act defendant where "[a]t no time . . . did plaintiffs
24  present evidence to cast doubt on the veracity of the advertising statements . . . [and] [t]he
25  claim . . . should have [been] . . . voluntarily dismissed . . . when it was clear that there was
26  no evidence to support it."), *aff'd by Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir.

27
28                                          3

2002); *Societe Civil Succession Richard Guiono v. Beseder, Inc.*, 2007 WL 3238703 at *13 (D. Ariz. 2007) (finding the case exceptional, for purposes of the plaintiff's Lanham Act claim, when plaintiff failed to introduce any evidence at trial capable of defeating a Rule 50(a) motion); *J & J Snack Foods, Corp. v. Earthgrains Co.*, 2003 WL 21051711 at 5-6 (D. N.J. 2003) (plaintiff's case became exceptional when plaintiff failed to reconsider its position after knowing it was unable to present evidence necessary to show its case had merit).

Therefore, the Court finds that ARBICO is entitled to an award of reasonable attorneys' fees as a prevailing defendant in this "exceptional" Lanham Act case. The award shall encompass the time period from the first day of trial (October 23, 2007), through and including the filing and preparation of the instant Motion.

B.   Reasonableness

The Court now turns to whether ARBICO's requested fees are reasonable. An award of reasonable fees is initially determined by calculating the "lodestar" figure: the number of hours reasonably expended multiplied by a reasonable hourly rate. *City of Burlington v. Dague*, 505 U.S. 557, 559 (1992); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). The fee applicant bears the burden of documenting the hours expended in litigation and must submit evidence in support of those hours. *Id.* "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds*, 808 F.2d 1373 (1987).

The lodestar analysis is further informed by the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975). Those factors are "intended to provide district courts with guidance in making the determination of the number of hours

reasonably expended on litigation and reasonable hourly rate." *Chalmers*, 796 F.2d at 1211. The Kerr factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skills requisite to perform the legal service; (4) the preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstance; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr*, 526 F.2d at 69-70.

The district court is given wide latitude in reducing the fee applicant's compensable hours based on the above criteria. However, the court must provide an explanation for the fee award. *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001).

Here, ARBICO requests $818,994.50 in attorneys' fees ($520,828.00 in pre-trial attorneys' fees, $288,416.50 for trial and post-trial defense, and $9,750.00 in fees related to the instant Motion).[3] Based upon the Court's calculations of the un-redacted billing invoices submitted by ARBICO, however, ARBICO's "trial and post-trial defense" fees total only $229, 199.50. (Hyman Suppl. Decl. Exh. A at 154-172.) This amount includes time billed from October 23, 2007 (the first day of trial) through November 30, 2007–the last entry on ARBICO's billing invoice. Added to the amount will be $9,750 for time spent preparing the instant Motion. Therefore, the Court will use $238,949.50 as its starting point.

In challenging the reasonableness of the requested amount, Spalding "may not rely on conclusory challenges to [defendant's] evidence." *McGrath v. County of Nevada*, 67

---

[3] After initially producing redacted billing invoices, the Court permitted ARBICO to re-submit its time sheets. *See* [Docket #131.] Indeed, it was within the Court's discretion to permit ARBICO to re-file un-redacted billing invoices. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994). For that reason, Spalding's argument that ARBICO's initial submission redacting its billing invoices was not an "oversight" and therefore should not be considered, is without merit. (Supp. Opp'n at 7.)

5

1  F.3d 248, 255 (9th Cir. 1995). Instead, Spalding has the "rebuttal burden of providing
2  specific evidence that [defendant's] hours were duplicative or inefficient." *Id.* at 255-56
3  (quoting *Gates v. Gomez*, 60 F.3d 525, 534 (9th Cir. 1995)).

4  Upon receipt of ARBICO's un-redacted invoices, Spalding was given an opportunity
5  to file an amended opposition in order to contest the reasonableness of the claimed fees.
6  *See* [Docket #131.] In its amended opposition, Spalding does not contest ARBICO's hourly
7  rates. (Suppl. Opp'n at 8, n.9.) Rather, Spalding's only real objection to ARBICO's billing
8  is that the amount billed for trial time and preparation for trial is duplicative and excessive.
9  (Suppl. Opp'n at 8-9, n. 9.) As one example, Spalding points to certain billing entries by
10 one of ARBICO's attorneys, Kristin Walker, whereby Ms. Walker billed 16.4 hours to
11 "attend trial" on a day when trial was not in session. (Suppl. Opp'n at 9, n. 9.)[4]

12 As the Ninth Circuit has stated, the Court is "required to explain the reasons for its
13 fee award" but is not required to make findings as to each specific objection. *See Gates*,
14 987 F.2d at 1400. Moreover, "when faced with a massive fee application the district court
15 has the authority to make across-the-board percentage cuts either in the number of hours
16 claimed or in the final lodestar figure." *Id.* at 1399. Thus, the Court has independently
17 analyzed ARBICO's accounting records and finds that, as further explained below, the
18 interest of justice is best served by making an across-the-board percentage reduction to
19 account for block billing, in addition to excessive, duplicative, improper and miscalculated
20 billing.

21 To begin, ARBICO's use of block billing warrants a downward reduction. In *Welch*
22 *v. Metro. Life Ins. Co.*, the Ninth Circuit noted that the district court had "authority to

---

[4] Other than this one specific example, Spalding offers no other objections. In that regard, Spalding appears to have misinterpreted the Court's order permitting it to file an amended opposition. Spalding was given the opportunity to amend its opposition so that it could pinpoint specific billing entries of ARBICO as reasonable or unreasonable. Instead, Spalding spends ten pages arguing that ARBICO's initial, redacted submission was not a mere "oversight." Regardless of whether it was an "oversight"–the relevance of which having already been discussed above–Spalding's burden was to offer specific, reasonableness-related objections.

reduce hours that are billed in block format . . . because block billing makes it more difficult to determine how much time was spent on particular activities." *Welch*, 480 F.3d 942, 948 (9th Cir. 2007); *see also*, *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing "lump[ed] together multiple tasks, making it impossible to evaluate their reasonableness.").[5]  Here, all of ARBICO's recorded hours are billed in block format, thereby making it difficult, if not impossible, to determine how much time was spent on particular activities.  For that reason alone, an across-the-board reduction of 15% is appropriate to account for block billing.  *See Welch*, 480 F.3d at 948 (citing the California State Bar's Fee Report which concluded that block billing may increase time by 10% to 30%).

Next, the Court finds that another across-the-board reduction is warranted in light of ARBICO's excessive and duplicative billing.  While the Court does not contend that ARBICO's attorneys intended to "pad" their bills, it surmises that ARBICO's attorneys (and paralegals) often acted with a degree of zeal and thoroughness beyond that which would have been exercised by a reasonable attorney.  This applies to both large and small examples of their billing practices.

In terms of large examples, the Court need not venture past ARBICO's entries for the first few days of trial to note the inordinate amount of time billed by three to four different people.  Indeed, as one entry demonstrates (and as Spalding notes), Ms. Walker billed 16.4 hours on November 1, 2007 for, among other things, "attending" trial, when, on that day, trial was not even in session.[6]  (Hyman Suppl. Decl. Exh. A at 161.)  Other

---

[5] The term 'block billing' refers to the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (internal citations and quotations omitted); see also *Defenbaugh v. JBC & Assocs.*, 2004 U.S. Dist. LEXIS 16256 (D. Cal. 2004) (block billing occurs where "discrete and unrelated tasks are lumped into one entry.").

[6] ARBICO admits that this entry was improperly described. (Reply at 3.)  The Court, however, still makes an example of this entry, whether or not erroneously described.

7

entries include Ms. Walker consistently billing between 15 and 19 hours for attending and preparing for trial (Hyman Suppl. Decl. Exh. A at 154); Mr. Hyman, ARBICO's senior trial attorney, billing between 13 and 17 hours for attending and preparing for trial (Hyman Suppl. Decl. Exh. A at 154, 162); and ARBICO's paralegal, Ms. Le, billing nearly 17 hours a day attending trial and assisting Mr. Hyman and Ms. Walker. Considering trial never exceeded six hours per day, the Court finds that billing, in some instances over 15 hours in one day, shows commendable industry but is nonetheless unreasonable.

By way of smaller examples, the Court notes the odd, if not duplicative, billing as it relates to ARBICO's Rule 50(a) motion for judgment as a matter of law. Specifically, Ms. Chilton billed over seven hours researching, among other things, Rule 50(a) legal standards while Mr. Hyman billed approximately two hours doing the same. (Hyman Suppl. Decl. Exh. A at 163.) Moreover, on November 12, 2007, Ms. Walker billed 7.2 hours for "reviewing and revising" ARBICO's Rule 50 motion while Mr. Hyman and Ms. Chilton simultaneously "prepared" and "drafted" it for 7.8 hours each. (Hyman Suppl. Decl. Exh. A at 163.) In total, Mr. Hyman, Ms. Walker and Ms. Chilton billed over 70 hours preparing, drafting and revising ARBICO's Rule 50 motion.[7] Given the experience of the attorneys involved, the Court finds that this task, though important, should not have required the time of three different attorneys doing largely the same thing. *See e.g. Johnson v. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) (noting a reduction in allowable hours for the claims of multiple attorneys is warranted if the attorneys are unreasonably doing the same work). Thus, given these examples, both large and small, the Court finds that an across-the-board deduction of 30% is appropriate.

Furthermore, the Court makes an overall deduction of 5% for time billed as "travel." ARBICO has not submitted any evidence demonstrating a local customary practice of billing clients for travel time. *See Davis v. City and County of San Francisco*, 976 F.2d

---

[7] Given ARBICO's use of block-billing, this figure represents a conservative estimate of the time billed for ARBICO's Rule 50(a) motion. This figure is also exclusive of time billed by ARBICO's junior attorney, Mr. Troutman.

1536, 1543 (9th Cir. 1992) (noting that in order to recover attorneys' fees for travel time, counsel must submit evidence establishing that local attorneys customarily bill for travel time), *vacated on other grounds by,* 984 F.2d 345 (9th Cir. 1983). Indeed, from this Court's experience, such travel time is not billable for local attorneys.

Finally, attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act. *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). "[A] party cannot recover legal fees incurred in litigating non-Lanham Act claims *unless* 'the Lanham Act claims and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims.'" *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000)(emphasis added). The court has a duty to "make *some* attempt to adjust the fee award to reflect" work performed on non-Lanham claims. *Id.*

Here, ARBICO contends that its defense of Spalding's common law and state-law unfair competition claims were "inextricably intertwined" with Spalding's Lanham Act claim. ARBICO cites to the Second Amended Pre-trial Conference Order in which Spalding "identified each of the *same* 14 provisions of the ARBICO advertisements as the identical factual basis for each of the nine legal theories that plaintiff intended to prosecute at trial." (Mot. at 8.)

Spalding does not object to ARBICO's assertion that all nine claims are intertwined. However, Spalding's indifference notwithstanding, the Court cannot overlook the fact that only one claim arose under the Lanham Act and that ARBICO's time sheets do not show which activities related specifically to the Lanham Act or state law claims. Accordingly, the Court adopts ARBICO's suggestion that a 10% apportionment reduction is warranted. (Mot. at 9.)

## II. CONCLUSION

For the foregoing reasons, ARBICO is entitled to a total fee amount of **$95,579.80**. This amount comprises a base amount of $238,949.50 less a 15% deduction ($35, 842.43)

9

1  for block billing; a 30% deduction ($71,684.85) for duplicative, multiple and excessive
2  billing; a 5% deduction ($11,947.48) for time billed as "travel"; and a 10% apportionment
3  deduction ($23,894.95).  Spalding is ordered to pay $95,579.80, in a manner directed by
4  ARBICO's counsel, not later than thirty (30) days from the date of this Order.

7  IT IS SO ORDERED.

10  DATED:     May 29, 2008              _____
11                                        OTIS D. WRIGHT II
12                                        UNITED STATES DISTRICT JUDGE